# Law Office of Mohammed Gangat

675 3rd Ave, Ste 1810, NY, NY 10017
(718) 669-0714  mgangat@gangatpllc.com

May 24, 2023

<u>via ECF</u>
Hon. Judge John P. Cronan
United States District Court
Southern District of New York
40 Foley Square,
New York, NY 10007

            <u>**Re:**</u>    <u>**Christine Caba and Jofeny Duran v. Easy Pickins, Inc.,**</u>
                         <u>**Case No. 1:22-cv-09626-JPC**</u>

To the Hon. Judge Cronan:

      I represent plaintiffs Christine Caba and Jofeny Duran in the above-referenced action (the "Action"). Jointly with Defendant, we seek your Honor's approval of the settlement of this action, pursuant to the Second Circuit's decision in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015).

      This action arises under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") for unpaid overtime and other amounts due Plaintiffs as a result of the Defendants' alleged violations of these wage-and-hour laws, including failure to pay overtime, failure to pay spread of hours (i.e., an additional hour of pay for each workday in excess of ten hours per day), and failure to provide wage notices and accurate wage statements.

      The parties to this action by and through their attorneys have had multiple conversations ultimately arrived at a compromise figure of $7,000.00 to resolve all claims, including attorneys' fees and costs, and the parties memorialized this in a written agreement to resolve this Action (the "Agreement") that is now being submitted to Your Honor for approval. (A copy of the Agreement is attached hereto as Exhibit A).

      **I.**    **Legal Standard**

      As the Court is aware, when Fair Labor Standards Act ("FLSA") claims are settled, the Second Circuit requires the Court review and scrutinize settlements agreements to ensure fairness. *See Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015); *see also Wolinsky v. Scholastic Inc.,* 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012).

      The Second Circuit's ruling in *Cheeks* did not outline the factors for approving a settlement. It did, however, identify 'red-flag issues', such as if an agreement contains a confidentiality clause; the scope of the release and worries surrounding general releases; and counsel fees exceeding 40% of the settlement payment. *Cheeks*, 796 F.3d at 206.

This agreement contains no requirement for confidentiality. The attorney's fees are the usual and customary 33.33% of the net settlement amount after expenses are deducted from the gross settlement.

The agreement requires Plaintiffs to release certain claims, but it does not contain a general release. In fact, the release is limited to wage and hour claims and claims that were or could have been brought based on the facts alleged in the pleadings. Under a Cheeks analysis, courts routinely approve releases with such scope. *See, e.g., Arroyo v. J & M Realty Services Corp.,* No. 21 Civ. 3611 (PAE) (JLC), 2022 WL 595936, at *3 (S.D.N.Y. Feb. 28, 2022) (approving release under *Cheeks* that was limited to "any and all wage-and-hour claims and rights that were asserted in the Litigation or that could have been asserted from the facts plead in the Complaint initiating the Litigation[.]"); *Sicajan Diaz v. Pizza Napolitana, Inc.,* No. 19 CV 4911 (EK)(RML), 2020 WL 8265766, at *3 (E.D.N.Y. Dec. 12, 2020) (approving release under *Cheeks* where "plaintiff only agrees to release defendants from 'any and all claims, obligations, debts, liabilities, demands or causes of action' related to 'any alleged acts occurring before the effective date of this Agreement as it relates to any claims made by the plaintiff' arising under the FLSA and the NYLL.") *Hyun v. Ippudo USA Holdings*, No. 14 CV 8706, 2016 WL 1222347, at *3-*4 (S.D.N.Y. Mar. 24, 2016) (approving release that included both known and unknown claims and claims through the date of the settlement that was limited to wage and hour issues).

Beyond the red flags from *Cheeks*, Courts in this also look to the *Wolinsky* which case set forth several factors to resolve "[t]he ultimate question" of "whether the proposed settlement reflects a fair and reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching." *Wolinsky*, 900 F.Supp.2d at 335.

## II. Analysis of the *Wolinsky* Factors

The first factor is "the plaintiff's range of possible recovery." *Wolinsky*, 900 F.Supp.2d at 335 (citations omitted). Plaintiffs' counsel obtained the wage and hour records from defense counsel and performed a calculation of potential damages. Plaintiffs' counsel calculated that Plaintiff Caba was owed approx. $2,000 in wages and Plaintiff Duran approximately $1,200. Counsel also calculated that each Plaintiff was entitled to $10,000 in statutory penalties for failure to provide a wage notice and wage statements.

Plaintiffs are choosing to take a discount on those potential damages in light of the fact that they are recovering more than their alleged unpaid wages (Caba will recover $2,835 and Duran $1,500), and at trial there was a litigation risk that Plaintiffs would not prevail on their claims for $10,000 in statutory penalties. There was also the risk of judgment enforcement and based on these dual risks, Plaintiffs ultimately concluded that the recovery by this settlement is preferable to continued litigation.

The second factor is "the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses." *Wolinsky,*

900 F.Supp.2d at 335 (quotations & citations omitted). This is a significant factor for settling. Plaintiffs prefer the security of getting money now versus after conducting party depositions, completing paper discovery, conducting expert discovery, and preparing and participating in a trial. Plaintiffs consider the settlement amount to be a favorable recovery. Plaintiffs will be able to obtain a significant recovery, without confronting the risks of trial.

    Defendant wants to avoid the time and expense of defending this claim.  Although Defendant disputes the factual allegations, Defendant believes that the settlement is fair and reasonable because it will enable the Parties to avoid further anticipated burdens and expenses, including discovery costs, motion practice, trial, and attorneys' fees, which would be significant if the case were to go to trial.  Additionally, Defendant has considered the fee shifting nature of the FLSA for attorneys' fees if Plaintiffs were to prevail, which could result in a large fee award, even if damages were minimal.

    As to the third factor, which is "the seriousness of the litigation risks faced by the parties," *Wolinsky*, 900 F.Supp.2d at 335 (citations omitted), Plaintiffs decided to enter into this settlement because they are getting all of their unpaid wages plus additional monies, and not having to risk spending the time and effort to take this to trial, and end up with a very similar recovery.

    The fourth factor is "whether the settlement agreement is the product of arm's-length bargaining between experienced counsel," *Wolinsky*, 900 F.Supp.2d at 335 (quotations & citations omitted). This agreement is fully the product of arm's length bargaining between experienced counsel. Indeed, both sides exchanged letters to Your Honor concerning Defendants' anticipated motion to dismiss, and engaged in serious, substantive discussions and negotiations that resulted in this settlement.  The settlement is reasonable under all of the *Wolinsky* factors.

### III.    Reasonable Attorney's Fee[1]

    The attorney's fee is also reasonable. Employees who are defrauded of wages typically cannot afford reasonable hourly rates, and many sole practitioners are unwilling to risk their time and efforts to vindicate the rights of disenfranchised employees.  The Plaintiffs in this matter could not afford to pay usual and customary hourly fees to litigate this matter on their behalf. Due to these circumstances, Plaintiffs' counsel represented Plaintiffs on a full contingency. This is consistent with the fee-shifting policy incorporated into the FLSA.

    Some courts defer to the contract between the plaintiffs and their counsel. *Mares v. Dal Chon Kim*, 2016 U.S. Dist. LEXIS 96723, at *5 (S.D.N.Y. 2016) ("[T]he purpose of the FLSA is to regulate the relationship between an employee and his employer and to protect the employee for overreaching by the employer . . . . I do not understand the FLSA to regulate the relationship between the employee as plaintiff and his counsel or to alter the freedom of contract between a client and his attorney"). The latter view was espoused by the United States Supreme Court in

---

[1] Defendant takes no position on the issue of attorneys' fees.

*Venegas v. Mitchell*, 495 U.S. 82 (1990), where the Court construed 42 U.S.C. § 1988 and held that the fee-shifting statute:

> controls what the losing defendant must pay, not what the prevailing plaintiff must pay his lawyer. What a plaintiff may be bound to pay and what an attorney is free to collect under a fee agreement are not necessarily measured by the 'reasonable attorney's fee' that a defendant must pay pursuant to a court order. [The statute] itself does not interfere with the enforceability of a contingent-fee contract.

*Mitchell*, 495 U.S. at 90.

Similarly, in *Cheeks*, the Second Circuit Court of Appeals noted that the duty to pay wages falls upon the employer -- not the employee's counsel who labored for an agreed-upon fee. In *Cheeks*, the Second Circuit expressly noted "the FLSA's primary remedial purpose: to prevent abuses by unscrupulous employers, and remedy the disparate bargaining power between employers and employees." *Cheeks*, 796 F.3d at 207. *Cheeks* only requires a court to review "adequate documentation" of the fee, which is submitted herein, and a review of the settlement amount that the employer is paying to the employees. *Id.* at 206. *Cheeks* is in full accord with *Mitchell*, where the Supreme Court limited its view to what the "losing defendant must pay," and approved the plaintiff's counsel's fee based upon the private contract between the parties, without intruding into the relationship between plaintiff and counsel. *See Mitchell*, 495 U.S. at 89.

A one-third contingency fee is "commonly accepted in the Second Circuit in FLSA cases." *Najera v. Royal Bedding Co., LLC*, 2015 U.S. Dist. LEXIS 71877, at *7 (E.D.N.Y. June 3, 2015) (collecting cases). *See, e.g. Gaspar v. Pers. Touch Moving, Inc.*, 2015 U.S. Dist. LEXIS 162243, at *5 (S.D.N.Y. Dec. 3, 2015) ("Fee awards representing one third of the total recovery are common in this District"); *Calle v. Elite Specialty Coatings Plus, Inc.*, 2014 U.S. Dist. LEXIS 164069, at *9 (E.D.N.Y. Nov. 19, 2014) ("A one-third contingency fee is a commonly accepted fee in this Circuit."); *Rangel v. 639 Grand St. Meat & Produce Corp.*, 2013 U.S. Dist. LEXIS 134207, at *4 (E.D.N.Y. Sept. 19, 2013) (observing that in FLSA cases, district courts in the Second Circuit routinely approve of fees that amount to one-third of the total recovery). However, one-third is not the "'maximum fee percentage' that counsel may be awarded." *Fisher v. SD Protection Inc.*, 948 F.3d 593 (2d Cir. 2020). According to the Second Circuit, "[e]ven if helpful, however, the percentage of attorneys' fees cannot be the determinative factor in evaluating the reasonableness of the award." *Id.*

Here, the attorney's fee is reasonable because the settlement amount is being used to first reimburse the attorney for the costs of the litigation, and the remainder is divided between attorney and client with the attorney receiving ⅓ and the clients receiving ⅔. Specifically,

pursuant to the Agreement, the $7,000.00 will be divided as follows: $2,665, to Plaintiffs' counsel reflecting attorneys' fees ($2,165) and expenses ($500); $2,835 to Plaintiff Christine Caba; and $1,500 to Plaintiff Jofeny Duran.

In view of the foregoing, the Parties jointly and respectfully request that the Court approve the Settlement Agreement and permit the parties to submit the Stipulation of Voluntary Dismissal With Prejudice to the Court for So Ordering and filing with the Clerk of the Court. We thank the Court for its time and attention to this matter.

Respectfully Submitted,
Law Office of Mohammed Gangat

_____
Mohammed Gangat, Esq.

The Court is in receipt of the parties' settlement agreement. The Court has reviewed the proposal in light of *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170 (S.D.N.Y. 2015), and *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332 (S.D.N.Y. 2012), and finds that the settlement is fair.

The Court notes that the attorneys' fees were calculated using the percentage method and represent approximately one third of the total settlement amount. While the Court finds those fees to be reasonable, the Court does not make any finding as to the reasonableness of counsel's hourly rate or as to the reasonableness of any particular hours billed for work on this case.

Accordingly, the settlement is approved. Defendant's motion to dismiss, Dkt. 14, is denied without prejudice as moot. The Clerk of Court is respectfully directed to close Docket Numbers 14 and 19 and to close this case.

SO ORDERED.

May 25, 2023
New York, New York

_____
JOHN P. CRONAN
United States District Judge